## U.S. DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

04 DEC 20  AM 11: 59

CYNTHIA C. LAMBERT,
c/o MEZIBOV & JENKINS, LLP
1726 YOUNG STREET
CINCINNATI, OHIO 45202          :

                **Plaintiff,**          :

     **vs.**          :

GREG HARTMANN, in his official          :
capacity as CLERK OF COURTS          :
HAMILTON COUNTY COURTHOUSE          :
ROOM 375          :
1000 MAIN STREET          :
CINCINNATI, OHIO 45202          :

and          :

HAMILTON COUNTY BOARD          :
OF COUNTY COMMISSIONERS,          :
138 East Court St.          :
Room 306          :
Cincinnati, OH 45202          :
In their official capacities          :

          **Defendants.**          :

CASE NO. __1:04 C V 837__

JUDGE __J. WATSON__

---

## VERIFIED CLASS ACTION COMPLAINT
## WITH JURY DEMAND

---

## I. PRELIMINARY STATEMENT

1. Plaintiff Cynthia Lambert brings this action on behalf of herself and all others similarly situated  against Greg Hartmann in his official capacity as Clerk of Courts for Hamilton County.

(Hereinafter referred to as "Clerk of Courts" or "Clerk") and the Hamilton County Commissioners in their official capacities (collectively "Hamilton County" or the "County"). Ms. Lambert challenges policy and practice of systematically publishing personal and private information on its website, which offers unrestricted access to said information.

## II. JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 and 1343(3)-(4) and 28 U.S.C. §1367. Federal jurisdiction is appropriate in this instance to secure protection and to redress deprivations of rights conferred by 42 U.S.C. §1983. This Court may assume supplemental jurisdiction over Plaintiff's pendant state law claims pursuant to 28 U.S.C. §1367 because these claims arise out of the same nucleus of operative facts of the federal claims.

3. The actions complained of herein occurred within the Southern District of Ohio; accordingly venue with this Court is appropriate.

## III. PARTIES

4. Plaintiff Cynthia Lambert is a resident of Hamilton County and has been the victim of identity theft.

5. Defendant Greg Hartmann has served as the Clerk of Courts for Hamilton County since February 10, 2003. Part of Mr. Hartmann's official duties include the filing and preserving of all papers delivered to the Clerk's Office for that purpose. His Office maintains a web-site that has been in operation since approximately January 1999. Mr. Hartmann is sued in his official capacity for acts committed pursuant to Hamilton County policy.

6. Defendant County Commissioners Todd Portune, John Dowlin, and Guy Guckenberger are the duly elected and acting County Commissioners for Hamilton County, Ohio. Each

Commissioner is sued in his official capacity for acts committed pursuant to Hamilton County policy.

### IV. STATEMENT OF FACTS

7. On September 23, 2003, Ms. Lambert received a speeding ticket in Anderson Township, Hamilton County, Ohio (Ex. 1). The officer issuing the ticket completed in full an Ohio Uniform Traffic Ticket. This form is used by various law enforcement officials throughout the State of Ohio and serves as the legal complaint for a number of traffic violations. According the Ohio Uniform traffic law, Officers are to fill these tickets out in full when issuing a citation.

8. Ms. Lambert's speeding ticket included a great deal of personal and private information, including Ms. Lambert's name, signature, home address, birth date, driver's license number and her social security number. The issuing officer gave a copy of the ticket to Ms. Lambert and caused a copy to be delivered to the Clerk's Office for filing.

9. The Clerk's of Courts Office is responsible for the preservation of hundreds of thousands of court-related documents, and publishes many of these documents on its website. One of the divisions of the Clerk's Office, the traffic division, processes over 50,000 traffic tickets each year. Upon information and belief, the Clerk's Office causes each traffic ticket received to be published on its website in an electronic form which produces an image of the ticket in its original, unaltered form. The website offers traffic offenders the ability to search for and to pay certain types of traffic tickets on-line. Users may search for a traffic ticket through the traffic ticket number, which is on the issued citation, or may undertake a more general name search in an attempt to retrieve an image of a scanned ticket. The website's "name search" feature requires a user to type in a complete last name and the first letter of a first name. The website then produces a list a list of docket numbers

3

associated with the last name and first initial entered in the search.  Beside some of these dockets

numbers is a blue "doc" link, which allows users to view a document associated with a certain name

by clicking on the link, including traffic tickets.  The system is very "user-friendly."   Within ten

minutes of searching the Clerk of Court's website through a name search only,  Plaintiff's counsel

were able to retrieve, view and print three traffic citations.  (See Exhibits 2-4).  All tickets were in

the form of, or were in a form based upon, Ohio's Uniform Traffic Ticket form, and therefore

included the offender's name, signature, home address, birth date, driver's license number and social

security number. (See Id.)  Counsel has redacted the social security and driver's license numbers

from these documents.  In addition, counsel was able to quickly obtain an image of a dogwarden

citation which also contained the cited parties' social security number and other personal identifying

information (Exhibit 5).

10.   Despite the known and obvious risk associated with publishing personal and private

information including, but not limited to, an individual's social security number, the Clerk of Court's

Office published Ms. Lambert's traffic ticket on its website.  (Ex. 1).  As of the date of the filing of

this complaint, the ticket remains in its original, unaltered form on the Clerk's website and is

available to anyone with access to the internet.

11.   Nearly a year after Ms. Lambert received her speeding ticket, she received a call from

a Sam's Club loss prevention officer.   The officer informed Ms. Lambert that an individual

purporting to be Cynthia Lambert had made a very large electronics purchase in excess of $8,000.00,

immediately after raising Ms. Lambert's Sam's Club account credit limit.   Based on the

circumstances surrounding this sale, Sam's Club employees became suspicious, and asked for

identification before completing the sale. The individual posing as Ms. Lambert was able to produce

4

a driver's license displaying Ms. Lambert's full name, home address, birth date, driver's license number and social security number. Consequently, the sale was completed and charged to Plaintiff's account. The same day that Ms. Lambert spoke with Sam's Club, she filed a report with the Hamilton County Sheriff's department.

12. The next day, Ms. Lambert received a call from a Home Depot store, inquiring as to a credit card account opened in her name. Ms. Lambert did not open this account. Apparently, the individual opening the account was able to produce a seemingly authentic State of Ohio driver's license, which included Ms. Lambert's name, address, birth date, driver's license number and social security number. Approximately $12,000.00 in charges were made to this account.

13. Through her conversations with Sam's Club and Home Depot, it was suggested to Ms. Lambert that the woman posing as her might have gained access to Plaintiff's personal information through the posting of Ms. Lambert's traffic ticket on the Clerk of Court's website. Ms. Lambert also learned that the driver's license number used on the identification produced by the individual purporting to be her was wrong by one digit. Ms. Lambert subsequently conducted a name search on the Clerk of Courts website and was able to retrieve her traffic ticket in its original form. The traffic ticket contained her name and signature, her address, birth date, driver's license number and social security number. Her driver's license number, however, was off by one digit and exactly matched the number used by the woman posing as Plaintiff.

14. Ms. Lambert immediately contacted the Clerk of Court's office. She spoke with Mr. Jerry Poland, the Chief Deputy of the Municipal Traffic Division, and explained her predicament. Mr. Poland was dismissive of Ms. Lambert's concerns. He told her that tickets were published on the website as a convenience to the parties involved, that removing these items from the website

5

would require vast amounts of manpower, and – even though Mr. Poland was told of the matching incorrect driver's license numbers – that Ms. Lambert's identity could have been stolen by any number of means and not necessarily as a result of information posted on the Clerk's website.

15. Ms. Lambert took a number of other steps in an attempt to protect herself from further fraudulent activity. She subscribed to a service offered by the credit reporting agency, Equifax, which allowed her to view her credit rating on-line. She checked it on a daily basis. Ms. Lambert discovered that her credit-limit had been raised on a number of credit cards she already had, and that there was other, unauthorized activity on some of these cards. Before Ms. Lambert was able to cause a fraud alert to be issued on her social security number, nearly $20,000 worth of unauthorized charges appeared on various accounts in Plaintiff's name. As a result, Ms. Lambert's credit rating has fallen. She has invested substantial amounts of time and energy to ensure that she will not be held personally liable for any unauthorized charges.

16. A short time ago, Ms. Lambert was contacted by Blue Ash Police Detective Jay Graves. Detective Graves had an individual in custody who allegedly confessed to being a part of a ring of identity thieves. According to Detective Graves, the information these thieves used in order to pose as others, and thereby gain access to personal financial information, was obtained from traffic tickets published on the Clerk of Court's website. Ms. Graves has spoken with law enforcement officials who believe that they have arrested the woman who stole Ms. Lambert's identity, Ms. Sutherland, and that she was a part of this ring. Ms. Sutherland has been indicted and is awaiting trial.

17. Ms. Lambert has invested a great deal of time and has suffered emotional distress and anxiety arising from her attempts to clear her name and her credit rating, and to stop the unauthorized charges to her accounts. Upon information and belief, the social security fraud alert on Ms.

6

Lambert's social security number is effective for five years, only. Even though Ms. Lambert has managed to currently bring a halt to the unauthorized use of her identity, she has no way of knowing who else might have access to her personal and private information that was posted on the Clerk of Court's website. Without a change in her social security number, Ms. Lambert could face another round of fraudulent activity and unauthorized charges in another five years.

18. As a direct and proximate result of the publication of her SSN and other personally identifying information, as aforesaid, Ms. Lambert has suffered economic damages, damages to her personal credit rating, and damage to her reputation.

19. The damages suffered by Ms. Lambert as previously described are the direct result of the official policies, practices and customs of the Hamilton County Clerk who, under color of state law, indiscriminately publishes personally identifying information including citizen's social security numbers by means of its government website www.courtclerk.org to which members of the public have unregulated and unlimited access.

### V. CLASS ALLEGATIONS

20. Plaintiff maintains this action on behalf of herself and all individuals who have had their social security numbers published on the Clerk of Courts website.

21. Upon information and belief, hundreds of thousands persons have received traffic tickets since 1999 in Hamilton County, have had their social security numbers published by the Clerk of Courts and therefore compromise the putative class.

22. The members of the putative class are so numerous that joinder of individual claims is impracticable. Moreover, there are significant questions of fact and issues of law common to the members of the putative class. These issues include whether the publication of private information

7

over a public website constitutes a violation of constitutional rights to privacy and personal security; whether there is a legitimate governmental interest in the publication of individuals' social security number; and, whether and to what extent the publication of individuals' social security numbers causes compensable damages.

      23.     Plaintiff's claim is typical of the claims of the putative class. Plaintiff and all members of the putative class have been damaged in that private information has been published on the Clerk of Court's website.

      24.     The proposed class representative will fairly and adequately represent the putative class because she has the class members' interest in mind, her individual claims are co-extensive with and identical to those of the class, and because she is represented by qualified counsel experienced in class action litigation.

      25.     A class action in this instance is superior to other available methods for the fair and efficient adjudication of these claims since individual joinder of the claims of all members of the putative class is impracticable. Most members of the class are without the financial resources necessary to pursue this matter. Even if some members of the class could afford to litigate their claims separately, such a result would be unduly burdensome to the courts in which the individualized cases would proceed. Individual litigation increases the time and expense of resolving a common dispute concerning Clerk of Court's actions toward an entire group of individuals. Class action procedures allow for far fewer management difficulties in matters of this type and provide the unique benefits of unitary adjudication, economy of scale and comprehensive supervision over the entire controversy by a single court.

26.     The putative class may be certified pursuant to Rule 23 (b)(1) of the Federal Rules of Civil Procedure because inconsistent or varying adjudications with respect to individual class members would establish incompatible standards of conduct for Defendants to follow.

27.     The putative class may also be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendants have acted on grounds generally applicable to the putative class thereby making final injunctive relief and corresponding declaratory relief appropriate with respect to the claims and primary relief sought by the class.

28.     The putative class may further be certified pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure because questions of law and fact common to class members will predominate over questions affecting individual members and a class action is superior to other methods for fairly and efficiently adjudicating the controversy and causes of action described in the Complaint.

29.     Members of the putative class can be easily identified based on records kept by Defendants and damages and harm stemming from the indiscriminate publication of individuals' social security numbers is manifest and common to all members of the class.

## VI.  STATEMENT OF CLAIMS

### COUNT I

30.     Plaintiff repeats and reaffirms the assertions of fact contained in paragraphs 1 through 29 herein above.

31.     The foregoing acts of Defendants violate Plaintiff's rights to privacy under the United States Constitution.

## COUNT II

32.     Plaintiff repeats and reaffirms the assertions of fact contained in paragraphs 1 through 31 herein above.

33.     The foregoing acts of Defendants violate Plaintiff's right to personal security under the 14th Amendment to the United States Constitution

## COUNT III

34.     Plaintiff repeats and reaffirms the assertions of fact contained in paragraphs 1 through 33 herein above.

35.     The foregoing acts of Defendants violate Plaintiff's right to procedural and substantive due process under the 14th Amendment to the United States Constitution.

## COUNT IV

36.     Plaintiff repeats and reaffirms the assertions of fact contained in paragraphs 1 through 35 herein above.

37.     The foregoing acts of Defendant violate Plaintiff's legitimate expectations of privacy derived from her right to be free from unreasonable search and seizure under the 4th Amendment to the United States Constitution.

## COUNT V

38.     Plaintiff repeats and reaffirms the assertions of fact contained in paragraphs 1 through 37 herein above.

39.     The foregoing acts of Defendant violate Plaintiff's right to privacy under the common law of Ohio.

## COUNT VI

40.    Plaintiff repeats and reaffirms the assertions of fact contained in paragraphs 1 through 39 herein above.

41.    The foregoing acts of Defendant constitute the tort of publication of private facts in violation of the common law of the State of Ohio.

### VII.  PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Cynthia Lambert on behalf of herself and all others similarly situated hereby demands judgment against Defendants Greg Hartmann and Hamilton County Commissioners as follows:

1. For a declaration that  Defendants' indiscriminate publication of personally identifiable information and social security numbers by means of its government website constitutes a violation of the United States Constitution and the common law of the state of Ohio;

2. For preliminary and injunctive relief enjoining, prohibiting and preventing Defendants from further indiscriminately publishing personally identifiable information and social security numbers of citizens by means of its official website www.courtclerk.org or by any other means.

3.    For an award of compensatory damages in favor of Plaintiffs  in an amount commensurate with their economic and non-economic injuries stemming from the indiscriminate publication of personal identifiable information and social security numbers pursuant by means of Defendants' official website

4. For an award of reasonable attorney fees and costs incurred by Plaintiff and the members of the putative class in prosecuting this matter.

5. For an award of such other relief in law and equity to which Plaintiffs and the members of the putative class may be entitled under the premises.

Respectfully submitted,

MARC D. MEZIBOV (Ohio Bar No. 0019316)
CHRISTIAN A. JENKINS (Ohio Bar No. 0070674)
ANITA BERDING (Ohio Bar No. 0066229)
**MEZIBOV & JENKINS, LLP**
1726 Young Street
Cincinnati, Ohio 45202
Telephone: (513) 723-1600
Telecopier: (513) 723-1620

Trial Attorneys for Plaintiff, Cynthia C. Lambert

12

## JURY DEMAND

Plaintiffs hereby demand that all issues of fact in the foregoing class action complaint be tried by a jury.

MARC D. MEZIBOV (Ohio Bar No. 0019316)
CHRISTIAN A. JENKINS (Ohio Bar No. 0070674)
ANITA P. BERDING (Ohio Bar No. 0066229)
1726 Young Street
Cincinnati, Ohio 45202
Telephone: (513) 723-1600
Telecopier: (513) 723-1620
Trial Attorney for Plaintiff Cynthia C. Lambert

13

## VERIFICATION

I, Cynthia Lambert, Plaintiff hereby verify and affirm under penalty of perjury that the averments and statements of fact in the foregoing Complaint are true and accurate to the best of my knowledge and belief.

*Cynthia C Lambert*

CYNTHIA LAMBERT, Plaintiff

14