UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Cynthia C. Lambert,

    Plaintiff,

v.

Greg Hartmann, *et al.*,

    Defendants.

Case No. 1:04cv837

Judge Michael H. Watson

## ORDER

This matter is before the Court upon Defendants Greg Hartmann and Hamilton County Board of County Commissioners' Motion to Dismiss. (Doc. 35) Plaintiff has filed a Memorandum in Opposition (Doc. 43) and a Notice of Supplemental Authority (Doc. 53). Defendant filed a Reply (Doc. 49), and the Court permitted Plaintiff to file a Surreply (Doc. 49). Also pending before the Court are Plaintiff's Motion for Leave to File Amended Complaint, Defendants' Memorandum in Opposition (Doc. 37), Plaintiff's Reply (Doc. 43), Defendants' Reply (Doc. 47), Plaintiff's Motion for Leave to Amend Complaint (Doc. 64), and Defendants' Reply (Doc. 65).

**A.**    **FACTS**

The following factual background is based upon the allegations in Plaintiff's Complaint, Plaintiff alleges that in September of 2003 she was issued a speeding ticket. (Doc. 1, ¶ 7) The officer issuing the ticket used the Ohio Uniform Traffic Ticket, which included Plaintiff's name, signature, home address, birth date, driver's license number,

and social security number. (Id. ¶¶ 7-8) The ticket was filed with the Hamilton County Clerk's Office. (Id. ¶ 9) The ticket was then published on the Clerk's website. (Id. ¶ 10)

Approximately a year after Plaintiff received the speeding ticket, Plaintiff received a call from a Sam's Club store regarding a large purchase made by an individual purporting to be Plaintiff. (Id. ¶ 11) Using a driver's license with Plaintiff's personal identifying information, the individual was able to purchase over $8,000.00 in electronics. (Id.) The next day, Plaintiff received a call from a Home Depot store regarding a credit card account opened in her name. (Id. ¶ 12) An individual using a driver's license with Plaintiff's personal information charged approximately $12,000.00 in purchases to this account. (Id.) Plaintiff learned that the driver's license number used on the identification produced by the individual purporting to be her was wrong by one digit. (Id. ¶ 13) Plaintiff found the speeding ticket on the Clerk's website and noted that the officer had recorded her driver's license number off by one digit. (Id.) Subsequently, Plaintiff learned that the Blue Ash Police had arrested a woman who the Police believed had stolen Plaintiff's identity. (Id. at ¶ 16)

Plaintiff alleges that as a direct and proximate result of the publication of her social security number and other personal identifying information on the Clerk's website, Plaintiff has suffered economic damages, damages to her personal credit rating, and damage to her reputation. (Id. at ¶ 19)

Plaintiff brings this action on behalf of herself and others similarly situated. (Id. ¶ 1) Plaintiff brings claims for violation of her right to privacy under the United States Constitution; violation of her Fourteenth Amendment right to personal security; violation of her right to procedural and substantive due process under the Fourteenth

Amendment; violation of her legitimate expectation of privacy to be free from unreasonable search and seizure under the Fourth Amendment; violation of her right to privacy under Ohio common law; and publication of private facts under Ohio common law. (Id. ¶¶ 30-41) In her first Motion for Leave to File Amended Complaint, Plaintiff seeks to amend her Complaint by properly naming the Hamilton County Commissioners; cite to more specific relief in the form of a court-supervised credit monitoring fund or other prophylactic relief; delete unnecessary facts; and add two additional allegations.[1] (Doc. 29) Plaintiff's Second Motion for Leave to Amend Complaint seeks to add two claims. (Doc. 64) The first claim is one for interference with rights common to the public, including the right to privacy, the right to be free from unlawful identity theft, the right to personal security and integrity, and the rights secured by Ohio Revised Code Chapter 1347. The second claim is one for a violation of Ohio's Privacy Act, Ohio Rev. Code § 1347.01, *et seq.*

**B.  ANALYSIS**

    **1.  Motion to Dismiss Standard**

Defendants' motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6).

The Sixth Circuit has distinguished between facial and factual attacks among motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *Pritchard v. Dent Wizard Intern. Corp.*, 210 F.R.D. 591, 592 (S.D.Ohio 2002). A facial

---

[1] These allegations are that Defendants have known since 2002 that individuals have been using information gathered from traffic tickets posted on the Clerk's website in order to commit identity theft; and personal information can be shared or sold to others who may hold it for years before using it to commit crimes.

attack on the subject matter jurisdiction alleged by the complaint merely questions the sufficiency of the pleading. *Ohio Nat. Life Ins. Co. v. U.S.*, 922 F.2d 320, 325 (6th Cir. 1990). In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss. *Id.* Here, Defendants' Motion attacks the sufficiency of the pleadings, and is therefore a facial attack.

A motion to dismiss under Rule 12(b)(6) requires this Court to construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief. *Meador v. Cabinet for Human Resources*, 902 F.2d 474, 475 (6th Cir.1990), *cert. denied*, 498 U.S. 867 (1990). "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir.1995); *see also Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986) ("It is not enough for a complaint . . . to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings.").

### 2. Constitutional Right to Privacy

Defendants argue that Plaintiff has failed to state a claim under 42 U.S.C. § 1983 because she has no constitutional right to privacy in her social security number.

Section 1983 imposes civil liability on a person acting under color of state law who deprives another of the "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Therefore, a plaintiff must allege two

elements to establish a *prima facie* case under section 1983: (1) that the action occurred "under color of law"; and (2) that the action was a deprivation of a constitutional right or a federal statutory right. *Parratt v. Taylor,* 451 U.S. 527, 535 (1981) *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986).

Plaintiff principally relies upon two cases for the proposition that an individual has a constitutional right to privacy in one's social security number: *Smith v. City of Dayton*, 68 F.Supp.2d 911 (S.D. Ohio 1999) and *State ex. rel. Beacon Journal Publishing Co. v. City of Akron*, 640 N.E.2d 164 (Ohio 1994).

In *Smith*, at issue was the release of information from a police officer's personnel file, including his home address and the results of his psychological and mental examinations. 68 F.Supp.2d at 915. This Court recognized that the Ohio Supreme Court in *Beacon Journal* had recognized a federal constitutional right to privacy in one's Social Security number. *Id.* at 917. However, this Court called this holding into doubt based on the Sixth Circuit's decision in *Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998). Ultimately, this Court found that under *Kallstrom*, the plaintiff did have a right to privacy in his address. However, the Court finds that the finding of a constitutional right to privacy is not automatic, and cannot be applied to broad categories of information.[2] Instead, this Court must analyze the asserted right under the Supreme Court's decisions in *Whalen v. Roe*, 429 U.S. 589 (1977) and *Nixon v.*

---

[2] A review of other decisions by the district courts within the Sixth Circuit reveals that district courts have declined to find a constitutional right to privacy in personal information. *Lawson v. Baxter*, 2006 WL 3004069, *2, n.1 (W.D. Mich. October 20, 2006) (slip op.) (expressing doubt that any privacy right under the Fourteenth Amendment extends to release of plaintiffs social security number or other private information); *Pitts v. Perkins Local School Board*, 2006 WL 1050675, *2 (N.D. Ohio April 19, 2006) (unpublished) (no Fourth Amendment right to privacy in address, phone number, and social security number).

*Administrator of General Services*, 433 U.S. 425 (1977), and the Sixth Circuit's interpretation of these cases, including *Kallstrom*.

In *Whalen*, the Supreme Court considered whether a New York statute violated a patient's constitutional right to privacy. 429 U.S. at 591. The statute required that the names and addresses of all persons who have obtained, pursuant to a doctor's prescription, certain drugs for which there is both a lawful and an unlawful market. *Id.* The Court recognized two different kinds of privacy interests: (1) the "interest in independence in making certain kinds of important decisions," and (2) the interest "in avoiding disclosure of personal matters." *Id.* at 599-600. The Court found there was no constitutional violation because the New York law evidenced a proper concern for the protection of the individual's interest in privacy. *Id.* at 605-606.[3]

In *Nixon*, the former president brought a constitutional challenge to the Presidential Recordings and Materials Preservation Act, which directed the Administrator of General Services to take custody of presidential tapes and other materials that accumulated during Nixon's presidency, separate the private from the public, and retain the public. 433 U.S. at 425. Nixon argued that the statute violated his right of privacy under the Fourth and Fifth Amendments. *Id.* at 455. The Court found that Nixon did have a legitimate expectation of privacy in private communications

---

[3] The Court recognized the potential threat to privacy in the collection of vast amounts of data, but because the statute, and its implementing administrative procedures "evidence[d] a proper concern with, and protection of, the individual's interest in privacy," the Court stated that it "need not, and do not, decide any question which might be presented by the unwarranted disclosure of accumulated private data-- whether intentional or unintentional--or by a system that did not contain comparable security systems." *Id.* at 605-606. Justice Stewart wrote separately and noted the Court's opinion did not support the proposition that broad dissemination of the information collected by the state would violate the Constitution. *See id.* at 608-609.

between himself and his family, his physician, or his minister. *Id.* at 457 (recognizing that "public officials, including the President, are not wholly without constitutionally protected privacy rights in matters of personal life unrelated to any acts done by them in their public capacity."). However, the Court held that the statute did not violate Nixon's right of privacy. *Id.* at 465. The Court explained that Nixon's expectation of privacy was outweighed by the limited intrusion of the screening process, by Nixon's status as a public figure, by his lack of any expectation of privacy in the overwhelming majority of the materials, by the important public interest in the preservation of the materials, and by the virtual impossibility of segregating the small quantity of private materials without comprehensive screening. *Id.*

The Sixth Circuit has narrowly construed *Whalen* and *Nixon*, holding that the right to privacy is triggered only when the interest at stake concerns "those personal rights that can be deemed 'fundamental' or 'implicit' in the concept of ordered liberty." *J.P. v. DeSanti*, 653 F.2d 1080, 1090 (6th Cir. 1981) ("Absent a clear indication from the Supreme Court we will not construe isolated statements in *Whalen* and *Nixon* more broadly than their context allows to recognize a general constitutional right to have disclosure of private information measured against the need for disclosure."); *see also Kallstrom v. City of Columbus*, 136 F.3d 1055, 1061 (6th Cir. 1998) ("This circuit has read *Whalen* and *Nixon* narrowly, and will only balance an individual's interest in nondisclosure of informational privacy against the public's interest in and need for the invasion of privacy where the individual privacy interest is of constitutional dimension.")

Therefore, the Sixth Circuit has concluded that the Constitution does not encompass a "general right to nondisclosure of private information." *DeSanti*, 653 F.2d at 1090.[4]

Therefore, not all disclosures of private information will trigger constitutional protection. The Sixth Circuit requires the following two-step process for analyzing informational right-to-privacy claims: (1) the interest at stake must implicate either a fundamental right or one implicit in the concept of ordered liberty; and (2) the government's interest in disseminating the information must be balanced against the individual's interest in keeping the information private. *Bloch v. Ribar*, 156 F.3d 673, 684 (6th Cir. 1998), citing *DeSanti*, 653 F.2d at 1090-91.

In *Kallstrom v. City of Columbus*, the Sixth Circuit found that under the first step of the above analysis, the plaintiffs had a privacy interest in personal information of a constitutional dimension. 136 F.3d at 1062. The facts of *Kallstrom* are that the City of Columbus disclosed personal information contained in police officer personnel files to defense counsel during a criminal trial in which the officers testified against the defendants. *Id.* at 1058. The court noted that "[i]ndividuals have 'a clearly established right under the substantive component of the Due Process Clause to personal security and to bodily integrity,' and this right is fundamental where 'the magnitude of the liberty

---

[4]In *J.P. v. DeSanti*, juveniles who had been convicted of a crime challenged the release of personal information to governmental, social, and religious agencies. *Id.* at 1082. The Sixth Circuit rejected their claim, observing that "the fact that the Constitution protects several specific aspects of individual privacy does not mean that it protects all aspects of individual privacy. Nor is there any indication in any [Supreme Court privacy decisions] of a constitutional right to nondisclosure of juvenile court records." *Id.* at 1088. However, the court explained that their opinion should not be read as holding that there is no constitutional right to nondisclosure of private information. *Id.* at 1090. Instead, the court explained that "[o]ur opinion simply holds that not all rights of privacy or interests in nondisclosure of private information are of constitutional dimension, so as to require balancing government action against individual privacy." *Id.* at 1091. Since *DeSanti*, the Sixth Circuit has found that the dissemination of private information may implicate a constitutional right to privacy. *See, e.g., Bloch v. Ribar*, 156 F.3d 673, 686 (6th Cir. 1998); *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1062 (6th Cir. 1998), *discussed infra*.

deprivation that [the] abuse inflicts upon the victim . . . strips the very essence of personhood.' " 136 F.3d at 1062-63, *quoting Doe v. Claiborne County*, 103 F.3d 495, 507 (6th Cir. 1996). The Court explained that "it goes without saying that an individual's 'interest in preserving her life is one of constitutional dimension.' " *Id.*, *quoting Nishiyama v. Dickson County*, 814 F.2d 277, 280 (6th Cir. 1987) (en banc). The court concluded that the disclosure of the officers' addresses, phone numbers, and driver's licenses, as well as the personal information of their family members rose to a constitutional dimension because of the threat to the personal security and bodily integrity of the officers and their family members. *Id.* at 1063. The court therefore proceeded to the second step, and balanced the officers' interests against those of the city. *Id.* The court noted that Ohio's Public Records Act required the state to make available all public records to any person, and for purposes of the case before it, assumed that the interest in public access to these records rose to a compelling state interest. *Id.* at 1064-65. Nevertheless, the court found that the release of the officers' information was not narrowly tailored to serve these interests. *Id.* at 1065. The court explained: "[w]hile there may be situations in which the release of the this type of personal information might further the public's understanding of the workings of its law enforcement agencies, the facts as presented here do not support such a conclusion." *Id.*

In *Bloch v. Ribar*, the Sixth Circuit again found that the plaintiffs had an interest at stake which implicated either a fundamental right or one implicit in the concept of ordered liberty. 156 F.3d at 685. In *Bloch*, a rape victim and her husband claimed that the sheriff violated their constitutional rights by holding a press conference to release

the confidential and highly personal details of the rape by an unknown assailant. *Id.* at 676. The court noted that "[t]he fact that the crime of rape occurred in this case implicates both a private and a public interest, but the details of the rape primarily implicate a private interest until such time as the public interest in prosecution predominates." *Id.* at 685-86. Therefore, the court concluded that "a rape victim has a fundamental right of privacy in preventing government officials from gratuitously and unnecessarily releasing the intimate details of the rape where no penalogical purpose is being served." *Id.* at 686. Moving to the second step of the analysis, the court explained that it appeared that there was no justification for disseminating the details of the rape at the time of the press conference. *Id.* Therefore, the court found that the plaintiffs had raised a cognizable privacy claim under section 1983. *Id.*

Unlike *Kallstrom* and *Bloch*, the Court determines that Plaintiff's alleged privacy interest in her name, signature, home address, birth date, driver's license number, and social security number do not implicate either a fundamental right or one implicit in the concept of ordered liberty. Plaintiff has only identified a risk of financial harm. While the Court is not unmindful of the problems which may result from the release of personal information, it nonetheless is beyond dispute that plaintiff's injury from the release of information in this case bears no equivalence to the potential and actual harm suffered by the *Kallstrom* and *Bloch* plaintiffs, respectively, which harm the Sixth Circuit has found to be protected by the Fourteenth Amendment. Therefore, the Court concludes that based upon the allegations in the Complaint, Plaintiff is not entitled to relief under section 1983. The Court finds that nothing within Plaintiff's proposed amendments to the Complaint would alter this conclusion.

### 4. State Law Claims

Having found that Plaintiff's constitutional claims are to be dismissed, the Court now turns to Plaintiff's claims under Ohio law for violation of her right to privacy and publication of private facts, as well as Plaintiff's proposed claims for interference with rights common to the public, including the right to privacy, the right to be free from unlawful identity theft, the right to personal security and integrity, and the rights secured by Ohio Revised Code Chapter 1347; and violation of Ohio's Privacy Act, Ohio Rev. Code § 1347.01, et seq.

The Court has supplemental jurisdiction over these state law claims because these claims form part of the same controversy as Plaintiff's Section 1983 claim. See 28 U.S.C. § 1367(a). However, this Court may decline to exercise supplemental jurisdiction if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). When a plaintiff's federal claims have been dismissed on the merits, the question of whether to retain jurisdiction over the state law claims rests within the Court's discretion. *Blakely v. United States*, 276 F.3d 853, 860 (6th Cir. 2002). However, the dismissal of the claim over which the federal court had original jurisdiction creates a presumption in favor of dismissing without prejudice any state-law

claims that accompanied it to federal court. *Id.* at 863. In addition, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). The Court finds that the issues presented are more appropriate for resolution by the state court system, and therefore the Court declines to exercise its supplemental jurisdiction.

## C. CONCLUSION

Defendants Greg Hartmann and Hamilton County Board of County Commissioners' Motion to Dismiss (Doc. 35) is hereby **GRANTED**. It is further **ORDERED** that Plaintiff's constitutional claims under section 1983 are **DISMISSED WITH PREJUDICE**; and the remaining claims based on state law are **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

Michael H. Watson, Judge
United States District Court